PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:26-cr-476 |
| Plaintiff, | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| STEVEN COMISAR, | ) | |
| Defendant. | ) | **ORDER** [Resolving ECF No. 6] |

Pending before the Court is Defendant's Motion for Revocation of Detention Order. ECF No. 6 and ECF No. 8 [SEALED Supplement]. The Government responded in opposition. ECF No. 14. Without objection, the Court conducted a hearing on October 19, 2026, at 3:00 p.m. ET, *via Zoom.gov*, at which counsel presented argument.[1] Having been informed, the Court denies Defendant's motion.

## I. Background

A grand jury returned an 18-count Indictment charging Defendant with five counts of Mail Fraud pursuant to 18 U.S.C. § 1341; six counts of Wire Fraud pursuant to 18 U.S.C. § 1343; five counts of Bank Fraud pursuant to 18 U.S.C. § 1344; and two counts of Aggravated Identity Fraud pursuant to 18 U.S.C. § 1028A(a)(1). ECF No. 9. The indictment capstones a criminal complaint that laid out a multi-million-dollar investment fraud scheme that Defendant allegedly committed from the hotel room he resided in for the past four years in Los Angeles, California. The Federal Bureau of Investigation ("FBI") executed a search warrant of his hotel

[1] Defendant is hospitalized and non-ambulatory.

room. Defendant was subsequently transported to a hospital because of his present medical conditions.[2] From his hospital bed, Defendant made his initial appearance and a detention hearing followed. *United States v. Comisar*, 2:26-mj-5575 (C.D. Cal.).

During that detention hearing, Magistrate Judge A. Joel Richlin of the Central District of California ordered that Defendant be detained pending trial. *United States v. Comisar*, 2:26-mj-5575 (C.D. Cal.). The magistrate judge concluded that "by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."[3] *Id*. The magistrate judge stayed his order of detention to allow Defendant to appeal it. Defendant made that appeal *via* the motion now at issue. *See* ECF No. 6.

## II. Law and Discussion

### A. Statutory Framework and Standard of Review

A defendant may seek relief from an initial order of detention by requesting that the order be reviewed and amended, or he may appeal the order:

> **(b) Review of a detention order.**--If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

---

[2] Defendant claims that "approximately four years ago he fell and has been bedridden ever since." ECF No. 6 at PageID #: 28. His medical records support such claims. ECF No. 8 [SEALED Supplement].

[3] The magistrate judge included the following reasons why Defendant should be detained: (1) use of alias(es) or false documents; (2) prior criminal history; (3) prior violations of probation, parole, or supervised release; (4) on probation, parole, and/or release pending trial, sentence appeal, or completion of the sentence at the time of the alleged offense; and (5) participation in criminal activity while on probation, parole, or supervision. *United States v. Comisar*, 2:26-mj-5575 (C.D. Cal.).

> **(c) Appeal from a release or detention order.**--An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145. From his motion and the arguments of defense counsel at the most recent detention hearing, it appears that, Defendant appeals and, in the alternative, seeks a review and modification of the existing order of detention. *See* ECF No. 6. District courts review such motions *de novo*. *See* *U.S. v. Spivak*, 555 F.Supp.3d 541, 546 (N.D. Ohio 2021), *see also*, *U.S. v. Yamini*, 91 F. Supp. 2d 1125, 1127 (S.D. Ohio 2000) (citing *U.S. v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985)). In *Hazime*, the district court judge "not[ed] that a clearly erroneous standard for review of the magistrate's decision was probably correct, ... [but] held a *de novo* hearing on the detention order." *Hazime*, 762 F.2d at 36. The Court of Appeals did not disturb this procedure but also did not impose a particular standard of review on the district court. *Id.* at 36–37. Accordingly, the Court reviews the order of detention, *de novo*, relying on the guidance provided in 18 U.S.C. § 3142. Both parties agree that this standard of review is proper. *See* ECF No. 6; ECF No. 14.

Defendant argues that the magistrate judge erred in holding a detention hearing and that he is not a flight a risk or a danger to some prospective witnesses pursuant to 18 U.S.C § 3142(f)(2). *See* ECF No. 6 at PageID #: 30. The Court need not decide the merits of Defendant's argument regarding the propriety of the magistrate judge's authority to order him detained. It is sufficient to say that Defendant has a right to appeal or seek review of a detention order made by a judicial officer from outside of the Northern District of Ohio.

**B. Whether Detention Is Warranted Under 18 U.S.C. § 3142(g)**

Relying on the factors provided in 18 U.S.C. § 3142(g), the Court finds that, despite his physical condition, Defendant is a danger to the community, and no single factor or combination of factors will contain that danger.

In reaching this decision, the Court relies on the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime a violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g). Despite the presumption of Defendant's innocence, each factor advises that Defendant should be detained pending trial.

**i. *Nature and Circumstances of the Offense***

As mentioned above, Defendant has been charged with several types of fraud. The loss amount alleged is substantial and the charges of aggravated identity theft requires a mandatory minimum consecutive term of incarceration of two years, if Defendant is convicted.

This is not the first time he has been convicted of charges involving fraud. Defendant has been sentenced to more than twenty years of incarceration for similar prior fraudulent schemes. These fraudulent schemes have been committed *via* email, telephone, and other forms of

communication that can be executed from a bed. As Government counsel argued, Defendant can commit these crimes on any electronic device. In the instant case, the FBI learned that Defendant was communicating with several fraud victims, just a few hours before the execution of the search warrant. The nature and circumstances of the offense conduct charged support pretrial detention.

**ii. *Weight of the Evidence***

The weight of the evidence is strong. The Government proffers that several email accounts found on Defendant's phone contained several messages to the alleged victims in the present matter. Checks sent by the alleged victims were delivered to the hotel and room Defendant was residing. These checks were then subsequently deposited into accounts owned by Defendant. He also threatened victims not to discuss with bank employees regarding checks written to him. Although, Defendant is presumed innocent, this factor also supports detention.

**iii. *History and Characteristics of the Person***

Defendant's prior criminal history, lack of legitimate employment, participation in criminal activity while on supervised release, use of aliases or false documents, and lack of stable residence support pretrial detention. Defendant has a long criminal history. Several of his convictions for fraudulent schemes mimic conduct charged in this case. His conviction for obstruction of justice strongly urges that he is a danger to the judicial process and others, even while detained. *See* *United States v. Comisar, et al.*, 2:03-CR-10 (C.D. Cal.). Punctuating the Court's concern is that he attained an obstruction of justice conviction while he was in custody

awaiting sentencing, for one of his many schemes to defraud.[4] *See* *United States v. Comisar*, 2:06-CR-807 (C.D. Cal.).

Defendant does not provide sufficient evidence of any employment or legitimate source of income. He markets himself as a con artist.[5] While Defendant argues that he has full-time employment hosting the podcast "Scam Junkie" affords him between $70,000 and $100,000 a year, this income is unverified. The lack of legitimate employment and verifiable income leads the Court to conclude that Defendant's primary financial resources are illicit. Any legitimate income, such as a claimed cryptocurrency account are not sufficient to sustain the lifestyle that Defendant was enjoying.[6]

The Government proffers that the charges in the present case arose from conduct that took place in 2019 while Defendant was serving a term of supervised release. *See* *United States v. Comisar*, 2:06-CR-807 (C.D. Cal.). It was not until June 8, 2021, when Defendant's term of supervision ended. The conduct charged supports the conclusion that Defendant participated in criminal activity while on supervised release.

---

[4] The scheme was created to extort a family member of a fellow inmate, and he offered to give the family exculpatory information he had about the fellow inmate. This was a lie; he did not have such information. When the inmate's family declined to pay Defendant began threatening the family with both physical and reputational harm. *See* *United States v. Comisar*, 2:06-CR-807 (C.D. Cal.).

[5] *See Steve Comisar Official Website*, https://stevecomisar.com/index.html, (last visited Oct. 23, 2026) (explaining the work of Defendant, "[h]e is best known as the only Hollywood actor who is also a famous con artist.").

[6] Prior to the execution of the warrant, Defendant's long-term hotel stay, food, and groceries cost him approximately $6,000 each a month. He was also paying a home health care aide. He claimed, as assets, only checking accounts totaling $2000 and a cryptocurrency account of the same amount.

Defendant has twenty-four known aliases. Two of the aliases publicized by Defendant himself includes, "The Don of Con" and "Brett Champion".[7] His usage of the alias Brett Champion allowed Defendant to promote himself as a fraud prevention expert and consultant. Despite his lack of credentials attesting to such expertise, Defendant has published a book "America's Guide to Fraud Prevention," utilizing this alias and claiming to be a fraud prevention expert.[8] Defendant also uses at least two different social security numbers.

Finally, Defendant lacks a stable residence. The hotel at which he resided for four years, no longer welcomes him as a guest. He argues, however, not persuasively, that his mother has agreed to allow Defendant to stay with her to provide him with a residence. The Court rejects this option because Defendant requires medical care in accord with his non-ambulant condition. Specifically, he requires help with daily bodily activities and requires a special diet. The Court has been given no reason to believe that Defendant's mother, who is an elderly woman herself, can care for Defendant's myriad medical and physical needs. Even if she were so capable, the record is devoid of any indication that she could prevent him from persisting with his alleged criminality.

**iv. *Nature and Seriousness of the Danger***

Defendant argues that his immobility hinders him from being a risk of flight and that there are ways to monitor him, so the community is not in danger. ECF No. 6 at PageID #: 32.

---

[7] *See Scam Junkie Podcast, About Steve Comisar*, https://scamjunkiepodcast.com/about/, (last visited Oct. 23, 2026) (Comisar recounting personal anecdotes from his decades-long career as a con artist, known as "The Don of Con" or "Brett Champion").

[8] *See America's Guide to Fraud Prevention*, https://www.amazon.in/Americas-Guide-Fraud-Prevention-Comisar-ebook/dp/B008CGRS2C, (last visited Oct. 23, 2026) (Kindle webstore displays Defendant as the author the cover of the book displays his alias Brett Champion).

The Court is not concerned with Defendant's risk of flight because he has serious injuries that limit his ability to ambulate and take care of himself. ECF No. 8 [SEALED]. Oddly enough, Defendant agrees that "the only reasonable concern the government could have is the risk that [Defendant] would contact the victim or commit new acts of fraud." ECF No. 6 at PageID #: 32. The Court is concerned about this potential contact.

The electronic devices Defendant used to commit the crimes alleged do not require ambulation. Defendant has a list of prospective victim leads awaiting him in his email.[9] Although he provides ways to mitigate such concerns including, electronic monitoring, no access to electronics, or making his mother a third-party custodian to help with monitoring. ECF No. 6 at PageID #: 32. None of these mitigation techniques satisfy the Court. As discussed above, even incarceration did not stop Defendant from perpetuating crimes. *See United States v. Comisar*, 2:06-CR-807 (C.D. Cal.).

For the reasons herein and otherwise on the record, the factors provided in 18 U.S.C. § 3142(g) support his detention until trial

## III. Conclusion

For the reasons stated herein and otherwise on the record, the Court denies Defendant's Motion for Revocation of Detention Order (ECF No. 6). The Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community if Defendant is not detained. Therefore, Defendant shall be detained pending trial. After he has been medically cleared for travel, he shall be transported to the Northern District of Ohio and detained at a place capable of providing the

[9] These prospective victims include people 90 years old and older and people with dementia.

medical care he requires. To the extent practicable, Defendant shall be kept separate from others who have already been convicted of their crimes; and he shall be allowed reasonable opportunity to privately consult with counsel, and be safely transported to Court when required.

IT IS SO ORDERED.

October 23, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge